UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re:

MORGANSEN'S LTD.,

       Debtor.

**MEMORANDUM OF
DECISION AND ORDER**
04-CV-0268 (ADS)

---------------------------------------------------------------X

GAIL S. GOSS, Executrix of the Estate of
Esther A. O'Keeffe,

       Appellant,

MORGANSEN'S LTD.,

       Appellee.

---------------------------------------------------------------X
Neil H. Ackerman,

       Trustee.
---------------------------------------------------------------X

**APPEARANCES:**

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
Attorneys for Appellee
190 Willis Avenue
Mineola, New York 11501
    By:    Neil H. Ackerman, Esq., Of Counsel

**RONALD DAVID WEISS, ESQ.**
Attorney for the Appellee
734 Walt Whitman Road, Suite 203
Melville, New York 11747

**WILLIAM F. BATES, ESQ.**
Attorney for the Appellant
120 Court Street
P.O. Box 1463
Riverhead, New York 11901

**SPATT, District Judge.**

This appeal arises from the October 14, 2003 Memorandum of Decision and Order by United States Bankruptcy Judge Stan Bernstein which granted the application of the Chapter 7 Trustee of Morgansen's Ltd. to hold an auction sale.

### I. BACKGROUND

The following facts are taken from the parties' submissions on this motion and the bankruptcy record on appeal. They are undisputed except where noted.

On February 11, 2001, the Appellant, Gail S. Goss ("Goss" or the "Appellant") as Executrix of the Estate of Esther A. O'Keeffe (the "Estate"), entered into written agreement with Morgansen's Ltd. ("Morgansen's" or the "Appellee" or the "Debtor") for the sale of personal property entitled "CONSIGNMENT AGREEMENT BETWEEN MORGANSEN'S LTD. ("MORGANSENS") . . . ." (The "Agreement") (emphasis in original).

The Agreement stipulated that Morgansen's would sell the Appellant's property for the benefit of the Estate with a 10% commission of the gross proceeds as compensation for its services. Under the Agreement, Goss set the minimum reserve price and could withdraw any item on 30 days' notice without charge. There is no

evidence that Goss filed any UCC financing statements with respect to the consigned goods.

During various evidentiary hearings and status conferences, a representative of the Debtor testified that it was engaged in the business of selling various expensive items such as jewelry, art, collectibles, and furniture in a shop in South Hampton, New York. Morgansen's acquired their goods by direct purchase from liquidating estates in the area and by consignment. Approximately 70% of their items were obtained by consignment. These items were sold to retail customers, other dealers, and interior decorators. The Debtor also conducted auction sales of its inventory. The Debtor's representative further testified that its core base of customers were interior decorators who would, in turn, resell the items to their clients. All of the goods obtained by direct purchase and by consignment were commingled in the shop and were displayed in cases. During the summer, the shop was open five to seven days a week. During the remainder of the year, the shop was open only two or three days a week.

On February 20, 2003, Morgansen's filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of New York for relief pursuant to Chapter 11 of the Bankruptcy Code. On August 26, 2003, the Bankruptcy Court converted the petition into a Chapter 7 case. Also, on that same date, the court appointed Neil H. Ackerman, Esq. as the trustee (the "Trustee"). The Appellant contends that she never received notice of the bankruptcy filing or the conversion.

Subsequently, the Trustee conducted a lien search, and found no liens of record. He subsequently instructed David Maltz & Co., an auctioneer, to secure the Debtor's premises and arrange for an auction sale, for which the Trustee would seek approval from the Bankruptcy Court. The Trustee also instructed the auctioneer to place a notice on Morgansen's door stating that the Debtor was in bankruptcy, and setting forth the auctioneer's phone number to be called if there were any questions. The auctioneer received calls from numerous people who had previously consigned goods to the Debtor. The Trustee's review of the list of creditors and schedules that had been filed by the Debtor indicated that there were many individuals who had not been listed by the Debtor at the time of the bankruptcy filing.

On September 17, 2003, the Trustee filed an application with the Bankruptcy Court to hold a hearing on a twelve day expedited notice with regard to a proposed auction sale (the "Notice"). On September 19, 2003, the Bankruptcy Court granted this request and scheduled a hearing for October 1, 2003. The Notice also stated that objections to the auction were to be filed by September 30, 2003. The counsel for the Trustee served the Notice on all persons known at that time to be creditors, consignors, or who were otherwise believed to have an interest in the case, including Goss. Prior to the hearing, several consignors, including Goss, filed written objections to the auction sale. In addition, in a letter to the Trustee dated September 19, 2004, William F. Bates, Esq. ("Bates"), as counsel for Goss, stated that several large items were still in the possession of Morgansen's and that "[n]one of this property belongs

to Morgansen's Ltd. None of it should be sold at auction." According to this letter, the estimated value of the "large items of personal property" that were in the possession of Morgansen's was approximately $35,000.

During the October 1, 2003 hearing, at which Appellant's counsel was present, the Bankruptcy Court heard arguments and factual presentations from the Trustee and the named auctioneer, David R. Maltz ("Maltz"). They proposed to have the auction on the premises of the Debtor, as opposed to the Maltz warehouse, because it would be prohibitively costly to relocate the goods from South Hampton to the auctioneer's warehouse in Plainview, New York. In addition, there was a great risk that in the process there would be substantial breakage of fragile goods. They also proposed to conduct the auction as soon as possible given the probable onset of adverse weather conditions and their concern that buyers might not remain in the resort town of South Hampton during the winter months. Furthermore, the Trustee stressed that monthly costs for rent, utilities, and insurance were accruing and that he had no assurance that those costs would not materially increase. Everyone present at the hearing had the opportunity to cross-examine Maltz.

At this hearing, the Bankruptcy Court also heard arguments from the various consignors. The Appellant's counsel presented numerous arguments to the Bankruptcy Court but did not call any witnesses or present any evidence in support of his contention. The Bankruptcy Court granted the objectors additional time to brief the issues and permitted them to file memoranda by October 13, 2003. The Court also

granted a continuance of the hearing until October 14, 2003. Goss did not file additional objections.

Also at the October 1, 2003 hearing, the Trustee advised the Court and all present, that a creditors' meeting pursuant to 11 U.S.C. § 341 would be held on October 9, 2003. It was announced that all consignors and other interested persons could attend this meeting and examine the Debtor's principal at length with regard to the relevant issues. The Appellant did not attend the October 9, 2003 meeting. Nor did she conduct any discovery, or attempt to contact or subpoena any witnesses. The Appellant did not testify or produce any witnesses to testify before the Bankruptcy Court.

On October 14, 2003, the consignors and the Trustee reconvened before the Bankruptcy Court. Felicia Branescu, the Debtor's principal, appeared at this hearing but Goss did not request to examine her.

On October 14, 2003, the Bankruptcy Court overruled all of the objections brought by the interested parties and granted the Trustee's motion to hold the auction sale. In a written decision issued that same day, Judge Bernstein stated the relevant law as follows:

> The law of consignments is governed by Uniform Commercial Code (UCC), especially sections UCC-9-102(a)(20) and next UCC 2-326, as amended by the State of New York, effective July 1, 2002. The standard approach is first to go to section 9-102(a)(20), and if the transaction does not fit under this section, then go next to section 2-326; if the transaction does not fit under section 2-236, then the transaction falls entirely outside the Uniform Commercial Code, and the Court must then

6

> fall back on the common law of bailments and other traditional practices.

Corrected Mem. and Order dated 10/14/03

In applying this analysis, Judge Bernstein first determined that the consignors did not carry their burden of establishing that the protections afforded by Section 9 of the New York Uniform Commercial Code (the "UCC") applied. The Bankruptcy Court then conducted an analysis pursuant to section 2-236 of the UCC. In so doing, Judge Bernstein determined that because the goods in question were delivered to Morgansen's on a "sale or return basis," they are "subject to the buyer's creditors while in the buyer's possession." Accordingly, Judge Bernstein found that "the law is painfully clear - anybody who delivers goods with a "right of return" to a merchant who sells them under its own name is at risk that the merchant may file for bankruptcy relief, and the trustee will liquidate the goods for the benefit of the creditors." Thus, the court granted the Trustees motion to hold an auction sale and overruled any objections to the sale. The Court notes that the Appellant did not file a formal request to stay the auction sale with either the Bankruptcy Court or this Court.

Thereafter, an auction sale was held in accordance with the Bankruptcy Court's decision. It is not clear from the papers the exact date of the auction. The auction sale raised $88,554.40 in revenue.

On October 27, 2003, Goss appealed from the Bankruptcy Court's Decision authorizing the auction sale. On appeal, the Appellant raises the following issues:

> 1. Whether the Appellant was denied due process when she did not receive adequate notice of

>   Morgansen's bankruptcy, the conversion of
>   Morgansen's case from Chapter 11 to Chapter 7,
>   or of the auction sale?
>
> 2. Whether the Bankruptcy Court erred in
>    concluding that the transaction at issue was
>    governed by the New York Uniform Commercial
>    Code and that Appellant's personal property was
>    subject to the rights of creditors?

## II. DISCUSSION

### A. Applicable Law

District court review of a Bankruptcy Court determination is governed by Rule 8013 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr."). Under this rule, "on an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. P. 8013. Questions of law are reviewed *de novo*. *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999); *see also In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). In addition, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bkrptcy. P. 8013 (1991). "The 'clearly erroneous' test is not met unless the reviewing court, without reweighing the evidence, is left with the definite and firm conviction that a mistake has been committed." *Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.*, 239 F. 3d 179, 186 (2d Cir. 2001) (internal quotation marks and citations omitted).

### B. Issues on Appeal

**1. Was the Appellant denied due process when she allegedly did not receive adequate notice of Morgansen's bankruptcy; the conversion of Morgansen's case from Chapter 11 to Chapter 7; or of the auction sale?**

In this regard, Goss contends that the Bankruptcy Court erred in granting the Trustee's motion to hold an auction sale because "the Appellant and other individual consignors were given inadequate notice of the disposal of their personal property and were not given a reasonable opportunity to protect their common interests." Appellant Brief at 5. In particular, the Appellant argues that she did not receive notice of the Chapter 11 bankruptcy petition filed in February 2003; she did not receive notice of the conversion from a Chapter 11 bankruptcy to a Chapter 7 bankruptcy pursuant to 11 U.S.C. § 341(a); and she did not receive any information about the pending bankruptcy until September 21, 2003. Therefore, she claims that she had little more than one week to prepare for the October 1, 2003 hearing and was unable to participate in a 11 U.S.C. § 341 creditor's meeting.

The Court does not dispute the "The opportunity for a creditor to participate in bankruptcy proceedings is of upmost importance." *In re Massa*, 187 F. 3d 292, 296 (2d Cir. 1999) (citations omitted). But not every instance of failure to notify violates a creditor's due process rights. To determine whether a creditor was adequately apprised of the proceeding, the Court must look to "'the totality of the circumstances.'" *Id.* at 296 (quoting *Dinova v. Harris (In re Dinova)*, 212 B.R. 437, 443 (2nd Cir. 1997). A review of these proceedings reveals that none of the

Appellant's arguments hold weight. The Appellant's due process rights were not violated because she was given notice that was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 206, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)).

The Debtor in this case failed to include Goss and many of the other objectors, on its schedule of creditors. That is the reason that Goss never received notice of the filing and/or the conversion. However, the record indicates that within a month of his appointment, on August 23, 2003, the Trustee posted a notice on the door of Morgansen's place of business alerting creditors to the pending Bankruptcy. On or about September 19, 2003, he also served a notice of the bankruptcy on all of the potential creditors, including Goss. The record reveals that Goss received notice of the Chapter 11 filing and the conversion to Chapter 7 on or before September 19, 2003, almost two weeks before objections to the auction sale were to be filed. In addition, at the October 1, 2003 hearing, the Bankruptcy Court granted the Appellant's request for an extension of time and extended the deadline to file a memorandum of law by ten days. Thus, Under the circumstances the Court finds that Goss was afforded due process in that almost one month elapsed from the time the Appellant knew of proposed sale to the day the Bankruptcy Court authorized the sale on October 14, 2003.

The Court now turns to Goss' contention that she did not receive proper notice of the auction sale, and that this lack of notice was prejudicial to her. The Bankruptcy Code provides that "[u]nless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business." 11 U.S.C. § 1108. In that regard, a trustee "may enter into transactions including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). However, when a transaction is outside the ordinary course of business, a trustee may use, sell, or lease property of the estate only after notice and a hearing. 11 U.S.C. § 363(b)(1). The phrase "after notice and a hearing" is defined in Bankruptcy Code Section 102(1) as: "such notice as is appropriate in the particular circumstances and such opportunity for a hearing as is appropriate in the particular circumstances . . . ." 11 U.S.C. § 102(1) (1979). "The critical factor is that an opportunity to object and be heard be given to each claimant to the property and party in interest." *Vonderahe v. Planiecki*, 276 B.R. 856, 859 (S.D. Ohio 2001).

Although Goss contends that she did not have adequate time to respond to the notice of auction sale, it appears that Goss had retained counsel regarding this matter on or about September 19, 2003, nearly two weeks prior to the initial hearing. In addition, the Appellant filed a detailed objection prior to the first hearing and appeared by counsel at the first hearing. She also had an opportunity to examine the Debtor at the Section 341 meetings, subpoena witnesses, conduct discovery, and submit

additional papers prior to the October 14, 2003 continued hearing. The Appellant did not submit any additional papers, nor did she request additional time from the Bankruptcy Court. Also the Court notes that Goss does not now set forth any arguments that she was not able to raise before the Bankruptcy Court, as a result of the alleged lack of notice.

In addition, under the circumstances in this case, the Court finds that there was a sound business justification to conduct the auction sale in a relatively expedited manner. The town of South Hampton, where the goods were located, has a seasonal population that rapidly declines at the end of the summer and before the onset of adverse weather conditions. Also the cost of moving the goods to another locale proved to be very expensive. Under those circumstances, the Bankruptcy Court promptly, reasonably, and properly ordered that the auction sale take place as soon as possible so as to maximize the population base and the added return to the creditors.

Accordingly, the Court finds that under the circumstances in this case, the Appellant's due process rights were not violated.

> **2. Did the Bankruptcy Court err in concluding that the transaction at issue was governed by the New York Uniform Commercial Code and that Appellant's personal property was subject to the rights of creditors?**

The Appellant argues that the Bankruptcy Court erred in applying the New York UCC because the transaction at issue falls outside its scope. Rather, the Appellant argues that the Bankruptcy Court should have applied common law agency principles.

12

At the outset, the Court enunciates the policy underlying the law of consignments:

> The basis for this hostility to consignment arrangements from the bankruptcy courts is fairly obvious. Regardless of the legal theory of the consignment, in practical operation it looks like a sales transaction in which the unpaid seller retains a secret lien in his goods. *From a creditor's point of view, the consigned goods appear to be part of the regular inventory of the consignee which, therefore, ought to be subject to their claims.* What is more, unlike a pre-code chattel mortgage, there is no public filing or other notoriety respecting the consignment to warn the creditors that the consignor may have rights in the goods which are superior to theirs.

*In re Truck Accessories Distributing, Inc.*, 238 B.R. 444, 448 (Bankr. E. D. Ark. 1999) (emphasis added) (internal quotations and citations omitted).

Section 541 of the Bankruptcy Code broadly states that a bankruptcy estate is created by the commencement of a case under 11 U.S.C. §§301, 302, or 303. Pursuant to Section 541(a)(1), all interests of the debtor in personal property as of the commencement of the case becomes property of the estate. Also, "items in the possession of the debtor may become property of the estate only to the extent of the debtor's property interest in those items." 5 Collier on Bankruptcy, §541.06[1-a] (15th Ed. rev. 1999).

To determine whether the items in question, which were undeniably in the possession of the Debtor at the time of the bankruptcy filing, are part of the bankruptcy estate, the Bankruptcy Court correctly looked first to Article 9 and then to Article 2 of the UCC. Prior to July 1, 2001, UCC distinguished between a "true" consignment and a

consignment intended as a security interest. *Id.* at ¶ 541.06[1][b]. A "true" consignment sale, was addressed in UCC §2-326. Prior to the 2001 amendment, this section essentially stated that "while goods are in the possession of the consignee, they will be subject to the claims of the possessing party's creditors unless the consignor complies with an applicable sign-posting statute, the possessing party is known by his or her creditors to be dealing in the goods of others, or the consignor complies with the filing provisions of Article 9." *Id.* On the other hand, consignment intended as a security interest were covered by Article 9 which governed secured transactions. Thus, in order to protect the security interest in the consigned goods, the consignor would have to prefect his or her security interest by filing the requisite financing statement

On July 1, 2001, Section 2-326 was amended so that transactions involving consignments would generally be covered by Article 9. However, as set forth below, certain consignments, such as the one at issue in this case, that are not consignments under §9-102(a)(20) may be covered by UCC Article 2. *See* UCC § 2-326, Official Comment ¶ 4 (stating that "[*C]ertain* true consignment transactions were dealt with in former Sections 2-326(3) and 9-114. These provisions have been deleted and have been replaced by new provisions in Article 9.") (emphasis added).

Article 9, Section 102(a)(20) of the UCC defines "consignment" as follows:

> (20) "Consignment" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
>
> > (A) the merchant:
> > (i) deals in goods of that kind
> > under a name other than the name

          of the person making delivery;

          (ii) is not an auctioneer;

          and

          (iii) is not generally known by its creditors to be substantially engaged in selling the goods of others;

   (B)   with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

   (C)   the goods are not consumer goods immediately before delivery; and

   (D)   the transaction does not create a security interest that secures an obligation.

  The Bankruptcy Court found that the transaction at issue did not satisfy this definition. First, the Bankruptcy Court found "[u]nder (A)(i), the debtor is indisputably a merchant who deals in goods delivered to it for the purpose of sale, and the debtor operates under a trade name other than the names of the 'consignors.'" As to the second element, namely, whether the merchant is an auctioneer, Judge Bernstein held that although, "the consignors who opposed the auction represented that the debtor was, in fact, an auctioneer by virtue of its holding several auctions a year, especially during the summer months, at its least premises in the Hamptons," Morgansen's "did not exclusively act as an auctioneer" because the it sold its own goods and some of the consigned goods in "non-auction" transactions.

15

The Court notes that although Morgansen's operated under the name "Morgansen's, Ltd., Auctioneers & Appraisers," and its website, business cards, telephone book listing, and other advertising materials, which all indicate in one way or another that Morgansen's is in the auction business, as pointed out by the Bankruptcy Court, the exact proportion of Morgansen's business that is actually dedicated to auctions is not clear. In any event, with regard to the third element, the Bankruptcy Court found that "none of the objecting consignors put on any proof that the debtor was not generally known by its creditors to be substantially engaged in selling the goods of others." (internal quotation omitted). Thus, the Bankruptcy Court concluded that the transaction at issue was not a consignment under Article 9. The Court agrees. Significantly, Goss does not object to the Bankruptcy Courts conclusion that her transaction is not covered by Article 9. *See* Appellant's Brief at 10.

Although Article 9 does not apply, the court must next analyze this transaction under Article 2. This section is construed broadly and states "[u]nless the context otherwise requires, this Article applies to transaction in goods . . . ." UCC § 2-102.

Section 2-326 states as follows:

> Article 2, Section 326 of the UCC Sale on Approval and Sale or Return; Rights of Creditors:
>
> (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is
>
> > (a) a "sale on approval" if the goods are delivered primarily for use, and

(b) a "sale or return" if the goods are delivered primarily for resale.

(2) Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

(3) Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this article (Section 2-201) and as contradicting the sale aspect of the contract within the provisions of this Article on parole or extrinsic evidence (Section 2-202).

Pursuant to this section, when delivered goods may be returned by the buyer and the goods are delivered primarily for use the transaction is a "sale on approval." On the other hand, if the goods are delivered primarily for resale, the transaction is a "sale or return." According to the Official Comment to this section, goods that are "sale on approval" are subject to the claims of the buyer's creditors only at acceptance, while goods that are "sale or return" are subject to claims of creditors while in the buyer's possession. UCC §§ 2-326(1) and 2-326(2) (McKinney 1991).

The Bankruptcy Court concluded that this section applied to the transaction at issue. In particular, with respect to this section, the Bankruptcy Court found that Morgansen's was authorized to sell the Appellant's item by private sales, and/or by auction, and its only written obligation was to pay to Goss the net proceeds of the sale, less its commission. As such, the Bankruptcy Court found that "[u]nder UCC Section 2-326 as amended, goods which are consigned for sale, are property of the bankruptcy estate of the 'consignee,' and subject to the claims of the creditors of the entity doing

17

the sale (Morgansen's)."

The Appellant claims that the Bankruptcy Court erred in applying this section of the UCC. Rather, the Appellant argues that "Article 2 only applies to the sale of goods," and that this transaction created a mere agency relationship.

At the outset, the Official Comment to the revised UCC § 2-236 indicates that certain consignments are covered by Article 2. Turning to the language of Section 2-236, the record reveals that the Appellant delivered the property to the buyer, Morgansen's, with the intent and understanding that Morgansen's would sell the items, either by private sales or auction. Morgansen's had complete discretion to sell the consigned goods at any time, place, or manner it saw fit. In addition, pursuant to the agreement, Goss could not demand that the goods be immediately returned, but rather could only do so on 30 days notice. Pursuant to the policy governing this statute, Morgansen's was under no obligation to reveal to a customer or creditor whether the goods were on consignment or owned by Morgansen's. Although the Appellant asserts that "it is unreasonable to conclude that creditors or anyone else dealing with Morgansen's would not know that Morgansen's is not the owner of the substantial portion of the goods in its possession and that these goods are not available to creditors," Appellant Mem. at 12, the record does not support this contention. *See, e.g., In re Wicaco Machine Co., Inc.*, 770 F.2d 1074 (3d Cir. 1985) (evidence that one-fifth of the creditors had knowledge that the debtor engaged in the sale of other people goods was not sufficient to demonstrate that the debtor dealt in the sale of other people's goods even though the one fifth represented 63% of the value of the claims

against the Debtor.).

Upon close review of this matter, the Court finds that there is one important issue with respect to the application of section 2-236 upon which the Bankruptcy Court failed to elaborate, namely the fact that this section refers to goods that are delivered to a *buyer*. According to Section 1-103 of the UCC, which is applicable here, a "buyer" is a "person who buys or contracts to buy goods." With respect to classifying a transaction as a "sale or return," "[a]lthough a buyer retains the right to return goods, a completed sale is generally deemed to have taken place and title passes to the buyer." *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (internal quotations and citations omitted). Although the Bankruptcy Court characterized Morgansen's as a "'buyer' for resale," there is no evidence that title passed from Goss to Morgansen's with respect to any of the consigned items.

Thus, with respect to Section 2-326, the Court requires clarification of the term "buyer for resale" as used by the Bankruptcy Court to define Morgansen's. Accordingly, this issue will be remanded to the Bankruptcy Court to address this concern and any other related matter that might arise.

## II. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Order of United States Bankruptcy Judge Stan Bernstein dated October 14, 2003, is affirmed in part and remanded in part; and it is further

**ORDERED**, that this matter is respectfully remanded to the Bankruptcy Court for further proceedings in accordance with this Order; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 27, 2005

                                                                          ARTHUR D. SPATT
                                                                      United States District Judge